2:22-CV-00712

# Fw: Agreement to Mediation & Confidentiality Signatures

**Hiram Glenn, Jr. <hiramglennjr@yahoo.com>**

Wed 8/23/2023 6:34 PM

To:ODS02198CPC <ods02198cpc@officedepot.com>

[CAUTION: EXTERNAL SENDER]

```
┌─────────────────────────────────────────┐
│  ▢ FILED        ▢ RECEIVED               │
│  ▢ ENTERED         SERVED ON             │
│          COUNSEL/PARTIES OF RECORD       │
│    ┌──────────────────────────┐          │
│    │                          │          │
│    │      AUG 2 4 2023        │          │
│    │                          │          │
│    └──────────────────────────┘          │
│         CLERK US DISTRICT COURT          │
│          DISTRICT OF NEVADA              │
│  BY: _____                │
│                           _____ DEPUTY   │
└─────────────────────────────────────────┘
```

Sent from Yahoo Mail on Android

----- Forwarded Message -----
**From:** "PEARL SARACHO" <PEARL.SARACHO@EEOC.GOV>
**To:** "Hiram Glenn, Jr." <hiramglennjr@yahoo.com>
**Sent:** Tue, Oct 13, 2020 at 5:10 PM
**Subject:** RE: Agreement to Mediation & Confidentiality Signatures

*Good evening Mr. Glenn,*

*Unfortunately, the parties are unable to reach a resolution at this time. This mediation has reached an impasse, and as such, I have released the charge to enforcement for further processing. If in the future the parties do come to an agreement on their own please contact me as soon as possible. Please log onto the portal at www.eeoc.gov for further information regarding the progress of your charge. Thank you.*



Pearl Saracho, Esq.

ADR Mediator

US Equal Employment Opportunity

255 E. Temple St. Fourth Floor

Los Angeles, CA 90012

222-cv-00712

## Fw: Accommodation Follow Up

**Hiram Glenn, Jr. <hiramglennjr@yahoo.com>**

Wed 8/23/2023 7:00 PM

To:ODS02198CPC <ods02198cpc@officedepot.com>

[CAUTION: EXTERNAL SENDER]

Sent from Yahoo Mail on Android

----- Forwarded Message -----
**From:** "Wolf, Angelica (CONTR)" <WolfAN@nv.doe.gov>
**To:** "'hiramglennjr@yahoo.com'" <hiramglennjr@yahoo.com>
**Cc:** "Bush, Eric S (CONTR)" <BushES@nv.doe.gov>, "Barnes, Chester L (CONTR)"
<BARNESCL@nv.doe.gov>, "Disanza, Dawn (CONTR)" <DISANZD@nv.doe.gov>
**Sent:** Thu, May 11, 2023 at 2:51 PM
**Subject:** Accommodation Follow Up

Hello Hiram,

Thank you for taking the time to re-engage in the ADA interactive process with me and your supervisors.

I wanted to check in and confirm that the current accommodation is going as discussed. Per our conversation on Monday, February 6, 2023, in addition to the current accommodations in place, you re-engaged regarding your previous request regarding a front seat on the bus. You confirmed that in fact there were no issues with the accommodation of allowing you to enter the bus (without waiting in line) and getting a first seat behind the bus driver. You had mentioned there was a new stop added to the bus lines, and there were new people getting on during that stop before your stop, but even so, there was no issue with getting a seat. As discussed, to ensure your ability to have a seat up front, we have worked with the supervision to mark that seat up front as reserved so you have no issues with having a seat up front (on the arriving bus to work and on the departure bus return home).

Additionally, it has been identified that new trailers were installed at U1a, and it is in your scope of work to be responsible to clean and maintain those as well. There are 4 steps that lead into the entrance of the trailer. They have been measured, and they fit within your 1 foot step restriction/accommodation. Therefore, you should be able to enter with no issues and work in that area as assigned. Should you have any concerns, or issues, please let supervision know right away, and reach out to me as well so we can re-engage and discuss further.

222-CV-00712

To confirm, per our conversation on March 1, 2023, regarding your Ariel Lift Certification. As discussed and agreed, you do not need this certification for your position therefore the company will not have you re-certify this certification. Should anything change we can revisit this, otherwise, this will have no impact on your current job tasks and essential functions.

To confirm, per our conversation on March 27, 2023, regarding your Asbestos Qualification. As discussed and agreed, you do not need this qualification for your position therefore the company will let your qualification remain expired and will not have you re-qualify. Should anything change we can revisit this, otherwise, this will not have an impact on your current job tasks and essential functions.

All other accommodations previously agreed to remain in effect –your assignment in U1A with modified duties (lifting only up to 50 lbs., no running, no steep hills, any weed abatement on steep hills being reassigned, vehicles less than 1 foot of the ground or a ladder or step should be provided, and breaks provided as necessary and reasonable for work that requires bending, lifting, standing or sitting.

If your request or assigned tasked change, or you feel the accommodation made is not meeting your needs, please reach out to me immediately so we can re-engage in the interactive process and re-assess your accommodation requests.

Thanks,

Angi

Angi Wolf

Principal HR Specialist - Leave and Accommodations Administrator

Mission Support and Test Services

contractor for the Nevada National Security Site

2621 Losee Road

North Las Vegas, NV 89030

Office: 702.295.3690

2:22-cv-00712

being taken seriously. The issues and concerns raised by Mr. Glenn were investigated and could not be substantiated. It was determined that the procedures and policies used to fill Labor assignments at the NNSS was in line with Union Agreement, in that is it management's right to make these determinations and assignments within its discretion. Further, Mr. Glenn *is* being accommodated and currently working in the role he requested at U1a. As explained above in great detail, MSTS has engaged with Mr. Glenn from his first initial request in 2018 and continues to the engage with Mr. Glenn to this day regarding his ADA accommodations.

- o  My response:
- Mr. Glenn claims when he asked to switch out of the Dodge truck because it was too high for his accommodation, he was bullied to take a Ford Truck with steps that was also too high. Mr. Glenn reached out to Wolf regarding Ford Truck being too high and was asked to clear out truck and was given a golf buggy.
  - o  Response: Again, this is addressed above. The vehicles provided to Mr. Glenn, were not too ig, in fact the both met this 3 ft. vehicle height restriction that was in place at the time. Despite that, due to his pushing different vehicles were provided. Then, when the vehicle height restriction lowered to  1 ft. a lower vehicle was provided.
  - o  My response:
- On September 17, 2019, Mr. Glenn claims he was set up to work in 20-N, which required him to walk up a steep incline.
  - o  Response: Again, as explained above, Mr. Glenn has been provided the less strenuous assignments and work within his restrictions, including not assigning work that required him to "climb steep hills." This is no evidence to support that any walking done by Mr. Glenn in area 20-N violated his restriction.
  - o  My response:
- On October 17, 2019, Mr. Glenn claims he injured himself while moving some furniture and recyclables into a truck after being "bird-dogged" a few days earlier
  - o  Response: As explained above, Mr. Glenn did claim a work related injury and was properly allowed to file a claim. Although the claim is currently denied with an appeal pending, this is again in no way evidence of discrimination. "Bird-dogged" is a term used by employees when supervision watches them. As you can imagine, with a wok site the size of the state of Rhode Island, it is impossible for supervision to always watch employees; thus there is a practice in which supervision will travel around the NNSS and observe work.

2 22 - C V - 0 0 7 12

\*MSTS Wolf, Mr. Glenn, and upper management

\*MSTS Wolf contacted Mr.Glenn to confirm his accommodations were being met (page 5, 8/8/2018)
My response

\*MSTS Wolf-interactive process with Mr. Glen and upper management (page 5, 8/7/2018)
My response

\*MSTS Wolf spoke to Mr. Glenn about moving back to Area 6 as an accommodation (page 5, 8/27/2018)
My response

\*MSTS Wolf spoke to Austin to confirm Mr. Glenn's restrictions and accommodations (page 5, 9/11/2018)
My response

\*MSTS Wolf receives communication from Mr. Glenn requesting to be placed at U1A complex (page 5, 9/2019)
My response

\*MSTS Wolf worked to determine if Mr. Glenn's request for placement in U1A would be accommodating (page 5, October and November 2019)
My response

\*MSTS Wolf communicating with Mr. Glenn regarding U1A placement while other jobs were being performed (page 5, 10/2019)
My response

\*MSTS Wolf advised Mr. Glenn of his start date (page 6, 11/25/2019)
My response

\*MSTS Wolf provided Mr. Glenn with updated confirmation of accommodations (page 6, 11/26/2019)
My response

\*MSTS Wolf advised Sargent that Mr. Glenn could begin in U1A above ground work (page 6, 12/2/2019)
My response

222-CV-00712

**\*MSTS U1A complex assignment (page 3)**
My response

**\*MSTS Angelica Wolf's accommodations/paperwork (page 3, 6/13/2018)**
My response

**\*MSTS Taylor Andrews labor relations representative (page 3, 6/14/2018)**
My response

**\*MSTS Wolf emailed Pusch regarding ADA process (page 3, 6/19/2018)**
My response

**\*MSTS Wolf updates Glenn on the status of his request (page 4, 6/19/2018)**
My response

**\*MSTS group (Wolf, Timothy Austin, and Pusch) discusses details of temporary accommodations for Mr. Glenn (page 4, 6/20/2018)**
My response

**\*MSTS Wolf talked to Mr. Glenn confirming details of assignment to accommodate restrictions (page 4, 6/21/2018)**
My response

**\*MSTS Wolf emailed Andrews requesting he gives Mr. Glenn his initial ADA accommodation agreement/signature (page 4, 6/27/2018)**
My response

**\*MSTS Wolf and Andrews discussed laborer assignments that could possibly accommodate Mr. Glenn's request (page 4, 7/12/2018-7/19/2018)**
My Response

**\*MSTS Mr. Glenn returned ADA job accommodation questionnaire to Wolf (page 4, on or about 7/27/2018)**
My response

**\*MSTS Wolf and Andrews discuss how Mr. Glenn's assignment was going at Fleet (page 4, 7/31/2018)**
My response

**\*MSTS - History of Mr. Glenn's employment (their page 2)**
**My response**

**\*MSTS response to charge indicated that they had thoroughly investigated all of the claims and determined that none of them have any merit. (their page 3)**
**My response:**

**\*MSTS response to accommodating properly (their page 3)**
**My response**

**\*MSTS response to handling ADA**
**properly handled which violated confidentiality**
**At the time my ADA was filed Anji Wolf and Taylor Andrews were the only two people that knew about my ADA**

**\*MSTS claims- manifestation of my disconnect on how disability was accommodated (page 3)**
**My response**

**\*MSTS hired Mr. Glenn for a large amount of physical and strenuous activity (page 3)**
**My response**

**\*MSTS states ongoing requests for less strenuous assignments, lower vehicles, and changes to work assignments (page 3)**
**My response**

- **Mr. Glenn claims race and age discrimination because he believes that "job reassignments" and "more pay" opportunities were given to younger white and Hispanic employees.**
- **Mr. Glenn claims that he is being left out of certain jobs intentionally and that he is being pushed out of work or that others are hoping he gets hurt and cannot work.**

**Mr. Glenn's job assignment is currently the specific job assignment he requested during the accommodation process and was agreed to by MSTS. He cannot now claim that this assignment or his lack of movement is somehow discriminatory. Moreover, Mr. Glenn was hired by MSTS less than 5 years ago. At the time Mr. Glenn was already over 50 years old. There is absolutely no evidence that Mr. Glenn's age is being considered in connection with his work assignments.**

- **My response:**

**\*MSTS Conclusion**

**My  response:**

- **June 4, 2020- Mr. Glenn claims that his Supervisor, Eric Norona harassed him about not letting him into Chuck's Place while he was cleaning.**
  - **Response: Mr. Glenn did fail to allow supervision in to utilize a conference room and inappropriately communicated with supervision. This was reported and addressed with Mr. Glenn but it does not support a claim of harassment.**
  - **My response:**
- **In or around June 20, 2020- Mr. Glenn claims that he was subject to harassing comments by management, such as "I can't use your F*ck*n ass, you are no good to me," while being made to clean different areas on foot.**
  - **Response: We believe Mr. Glenn is alleging that this comment was actually made by Keene (no by management). Ms. Keene denies this statement, as do his management.[13]**
  - **My response:**
- **Mr. Glenn claims that he was placed in a hostile work environment where there was verbal abuse and slamming of truck doors.**
  - **Response: As explained above, there is only one instance of a substantiated inappropriate comment. This comment was promptly and appropriately addressed by MSTS. There is no evidence to support this alleged hostile environment.**
  - **My response:**
- **July 1, 2020- Mr. Glenn claims that Robert Keene is harassing him by going to his office and putting a schedule on his desk in his office for the COVID cleanup.**
  - **Response: Giving Mr. Glenn a schedule for the COVID-19 cleanup in the area is in no way evidence of harassment. In fact, the opposite could be said, in that she was attempting to communicate with him regarding the cleaning schedule to ensure that work was properly completed.**
  - **My response:**
  - **3. Mr. Glenn's Age Claim and Race Allegations Fail**

**Mr. Glenn claims that other employees are being treated more favorable in violation of Title VII of the Civil Rights act of 1964. These allegations include:**

Again, this is in no way discriminatory, this is a standard practice performed by supervision.

- o My response:

- March 4, 2020- Mr. Glenn claims he was harassed by Steve L. who told him that he stole his buggy and said to him "You should be walking bitch."
  - o Response: Mr. Glenn fails to explain that this conduct was reported to MSTS and MSTS determined that Mr. Glenn stated "If one of these f*cking youngsteers would have some respect and give up their seat for an O.G." and then his colleague response inappropriately with, "you took our buggy, you should be walking b*tch." Upon the report MSTS took immediate action, received a written statement from the other party involved, provided him with counsel/coaching about his inappropriate conduct and then addressed the issue with the entire group at the next Plan of the Day ("POD") meeting, explaining the need for respectful communications at all times. There have been no reports of other or no further incidents. [12]
  - o My response:

- April 1, 2020- Mr. Glenn claims that 3 more laborers added to jobsite for COVID-19 clean up and Robert Keene made Foreman by Matt S because "she communicates better with Julian."
  - o Response: MSTS investigated this issue during the ECP and determined that job assignments were properly determined within management's discretion.
  - o My response:

- May 26, 2020, Mr. Glenn claims someone reported him driving his buggy on Mercury Hwy to the gas station.
  - o Response: While there was a good faith report of a potential safety violation because the buggy's are not allowed on the Highway, MSTS was unable to substantiate Mr. Glenn violated any safety rules but MSTS did determine that the report was made in good faith, by a disinterested supervisor.
  - o My response:

- When Mr. Glenn asked Roberta Keene about his boot voucher, she told him to park his buggy and that he had to ride with her in the Ford Truck to get it.
  - o Response: This is true, Mr. Glenn could not take his buggy on the highway. Thus, she offered him a ride. Again, nothing here supports a claim of discrimination.
  - o My response:

documentation from employees and does generate them from employee physicals/exams. This in no way would be discriminatory.
  - My response:
- Mr. Glenn claims that he was given a $100.00 boot voucher, when other employees were give $200.00 boot vouchers.
  - Response: Mr. Glenn received his last boot voucher on May 27, 2020. In June of 2020, the boot voucher amount increased to $200. Thus, while technically true, his does not support a claim of discrimination.
  - My response:
- Mr. Glenn claims that keys were intentionally taken away from him and given to another employee to hold all day.
  - Response: Again this was not reported as a concern at any time by Mr. Glenn. However, given the nature of our work and the facilities we manage, especially at U1a, keys are checked out, tracked and managed very carefully.
  - My response:
- Mr. Glenn claims he has intentionally not been paid to work through lunches but was told he would get 2 paid lunches a week. He claimed that Ebel Lopez was paid 2 WTL a week.
  - Response: While certain laborer assignments do occasionally work through lunch and thus receive premium pay per the Union Agreement; Mr. Glenn's assignment does not require him to work through lunch. It is important to note that we do not have any evidence that Mr. Glenn worked through a lunch and did not receive pay. Instead he seems upset for not having the opportunity to do so. Again, the lack of need for him to work through lunch is in work no way discriminatory, it is simply the nature of the assignment he is currently working.
  - My response:
- Mr. Glenn claims that he had to walk to do his cleanup because his Buggy was picked up after it was determined the tires were too high. Mr. Glenn alleges this was discriminatory action.
  - Response: As explained above, when no low vehicle was available that met his restriction, Mr. Glenn was accommodated by decreasing his work area and having him walk from building to building. This was not discriminatory, it was necessary to ensure that his vehicle height restriction could be met.
  - My response:
- Mr. Glenn claims retaliation and being bullied by management after he put in an employee and expressing concern that his ADA request was not

222- CV-00712

- **Mr. Glenn claims he was forced to ride in a cargo van, and was forced to ride in "Dons" truck until stepp boards could be installed. Mr. Glenn claimed this took 4 to 5 months, and was discriminatory.**
  - **Response: Although this is vague as to time and thus difficult to investigate, generally, as a Government Contractor, all vehicles at the NNSS are owned by the US government, thus with MSTS not owning any vehicles, it does sometimes take time to receive authorization for modifications or changes to vehicles. Any perceived delay would in no way be discriminatory, i would simply be part of the normal process. In addition, as explained in detail above, Mr. Glenn was provided with vehicles and/or transportation accommodating his current restrictions throughout the ADA process.**
  - **My response**
- **Mr. Glenn claims that he worked on an asbestos job in Mercury "wrapping asbestos pipes 5 feet deep in 100 degree heat." Mr. Glenn claims that was a strenuous scope of work that was discriminatory and worsened his medical condition.**
  - **Response: Mr. Glenn did work with this crew but he was assigned the less strenuous work. Thus, he provided clean up and was not assigned to wrap the pipe in the ditch.**
  - **My response:**
- **Mr. Glenn claims he was intentionally not scheduled for hazardous waste classes and that his web based training is not being given to him to make him fall behind in his certifications.**
  - **Response: Changes to training classes are made based on need for training and training availability. There has been no deviation from that process with Mr. Glenn's training schedule. Recently, due to COVID-19 restrictions, there was significant reductions in trainings available and thus this may be the reason for any changes he experienced.**
  - **My response:**
- **Mr. Glenn claims medical paperwork is being filed in the system intentionally so he can't do his training or get fit tested.**
  - **Response: his allegation doesn't make sense. We have an internal occupational medicine department that conducts physicals and determines fitness for duty. Mr. Glenn's fit for duty and 'fit test' for respirator use is separate from his ADA filed held with Wolf. However, Occupational Medicine does receive medical**

**\*MSTS Wolf received second questionnaire from Mr. Glenn regarding vehicle height restrictions (page 7, 2/3/2020)**
**My response**

**\*MSTS Mr. Glenn's temporary restrictions were lifted with the same permanent restrictions remaining (page 7, 2/12/2020)**
**My response**

**\*MSTS Mr. Glenn's golf cart tire safety (page 7, 7/20/2020)**
**My response**

**\*MSTS Wolf returns- indicates that Mr. Glenn did not return her calls (page 7, in August 2020)**
**My response**

**\*MSTS Wolf's request to communicate via email with Mr. Glenn regarding vehicle (page 7, in 8/28/2020)**
**My response**

**\*MSTS different golf cart type vehicle provided to Mr. Glenn (page 7, on or about 9/15/2020)**
**My response**

**\*MSTS Wolf provided updated confirmation of accommodation (page 7, 10/29/2020)**
**My response**

**\*MSTS Findings against Mr. Glenn's allegations (page 8,**
- **Mr. Glenn claims that on July 26, 2018, he was told he was moving to Fleet and that he would retire there. After four weeks Mr. Glenn had to return to Area 6, where the ruck he had previously been issued for his ADA Accommodation was not available. Mr. Glenn alleges this was a discriminatory action.**
  - **Response: As explained above, Mr. Glenn did move to different areas and into different vehicles during the accommodation process. Mr. Glenn was moved from Fleet due to lack of an assignment available that met his requests. None of these actions are discriminatory in nature.**
  - **My response:**

November , 2020


**RE: HIRAM GLENN JR  v. MISSION SUPPORT AND TEST SERVICES LLC**


## INTRODUCTION

**Experiencing discrimination at MSTS continues to be devastating and exhausting for me mentally and physically.  The despaired treatment I'm subjected to is blatant and intentional.  My treatment by MSTS by far is more discriminatory than 99% of  new laborers that were sent in the past, and present that start in construction in area 6, are moved at the highest percentage from heavy duty labor work in area 6 construction.  Their stay in area 6 construction is always short lived, as these laborers are swiftly reassigned to less strenuous jobs in other areas throughout MSTS.  Some are reassigned to areas and have bragged about how easy their jobs are,  and some are presently placed in supervisory positions.  Of course, MSTS has not shared, admitted, nor disclosed all of their discriminatory work practices they have used against me.  Why didn't MSTS follow-up on the calls I made to the hotline?  Why in 2020 am I still waiting for a response?   Who decides which call or concern will be answered or investigated? I left my name, telephone number, and the reason I called.  I couldn't get my voice heard through the hotline process, which is established to help all workers regardless of  race, color, age, and disability?**
**Based on MSTS' reckless and  irresponsible actions to hide and cover up my calls for help, leaves me no other alternative but to pursue my charge to the highest level. Maybe, just maybe, someone will hear my voice.**
**In that instance, I am  file a written concern.  desperately needed help, due to unfair treatment that was increasingly intensifying.    outlining my position, and taking this case as far as I can take**


**\*MSTS - Background (their response page 1)**

**My response**

1   Hiram Glenn Jr - written complaint, ADA
2   Privacy Act / HIPPA
3   Timeline / other
4   What happen when these Offenses occurred
5   Explain / List situations
6   Patrice Whitlow ( contr )
7   Job Accommodations Questionnaire 7-26-18 1-30-20
8   Taylor Andrews (contr) Re: Accommodations
9   Marathon Re: patient refferal /consult request
10  MsTS - Craft Empbyee Disciplinary warning
11  Bone / Joint Specialists 9/5/16, 11-4-16, 7-26-18 11-22-18  12-26-19 - 11-23-20
12  Bone /joint specialist /other imagess (2-7-13 4-10,15, 11-22-13, 12-13-19  9-23-20
13  U. S. Equal Employment Opportunity Commission 3-2-20 9-6-20
14  Laborers International Union of North America Referral slip
15  Eric Torres
16  Angi wolf Accommodation Request Follow-up
17  Certifrcates / Awards / Recognition
18  Photo of Laborers
19  Southern Nevada Laborers Training Trust local 872
20  MsTS Employee Code of Business
21  Fitness for Duty Reports/
22  Temporary Assignment offer
23  OSHA / Industrial Hygine /results
24  Calendars 2016- 2020 - 2020  2 sets
    Position statements

**Memorandum of Points and Authorities in Support of Motion for Summary Judgment**

## III. <u>ARGUMENT</u>

I HIRAM GLENN Jr would like my case
to be heard. I have proof in writing.
About the missed information that the
Defendants not being true. Photos,
Doctors Documents, statements and ect.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing there is no genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat the motion for summary judgment, the responding party must present admissible evidence sufficient to establish any of the elements that are essential to the moving party's case and for which that party will bear the burden of proof at trial. *See id.*; *Taylor v. List*, 880 F. 2d 1040, 1045 (9th Cir. 1989). The Court may grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show the movant is entitled to summary judgment and if the responding party fails to properly address the moving party's assertion of fact as required by Rule 56(c). *See* Fed. R. Civ. P. 56(e).

The responding party cannot point to mere allegations or denials contained in the pleadings. It is not enough for the non-moving party to produce a mere "scintilla" of evidence. *Celotex Corp.*, at 252. Instead, the responding party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. *See KRL v. Moore*, 384 F. 3d 1105, 1110 (9th Cir. 2004).

in this case will move this Court for summary judgment, pursuant to Federal Rule

of Civil Procedure 56.  This motion is based on this notice, the memorandum of

points and authorities filed herein, the declaration(s) filed by _Plaintiff_,
<span style="font-size:smaller">(indicate Plaintiff or Defendant)</span>

the exhibits filed herein, the statement of uncontroverted facts and conclusions of

law, the pleadings previously filed in this action, and any oral argument permitted

at the hearing on this motion.

This motion is made following the conference of counsel pursuant to Local

Rule 7-3 which took place on _____.
<span style="font-size:smaller">(date)</span>

DATED: _8-24-2023_

By: _Hiram Glenn_
<span style="font-size:smaller">(sign)</span>

_HIRAM GLENN JR_
<span style="font-size:smaller">(print name)</span>

_Plaintiff_ in Pro Per
<span style="font-size:smaller">(indicate Plaintiff or Defendant)</span>

## IV. __CONCLUSION__

For the reasons stated above, __Plaintiff__ is entitled to judgment.
(indicate Plaintiff or Defendant)

Dated: __8-24-2023__

By: __Hiram Glenn J.__
(sign)

__HIRAM GLENN Jr__
(print name)

__Plaintiff__ in Pro Per
(indicate Plaintiff or Defendant)

1

2  HIRAM GLENN Jr  (Full Name)

3  hiramglennjr@yehoo.com  (Email)

4  1841 Drifters Peak Street  (Address Line 1)

5  LV, NV 89144  (Address Line 2)

   702-929-9202  (Phone Number)
6
   Plaintiff  in Pro Per
7  (indicate Plaintiff or Defendant)

8

9                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF Nevada
10

11                                      | Case No.: 2·22-CV·00712

12  HIRAM GLENN Jr  ,            | Plaintiff 's
                                        | (indicate Plaintiff or Defendant)
13        Plaintiff,

14        vs.                           | NOTICE OF MOTION AND
                                        | MOTION FOR SUMMARY
15  MSTS                                | JUDGMENT PURSUANT TO
    Mission Support and                 | FED. R. CIV. P. 56
16  test Services LLC  ,

17        Defendant(s).                 | Hearing Date: _____

18                                      | Hearing Time: _____

19                                      | Judge: Richard F Boulware II
                                        |              (Judge's name)
20                                      | Place: _____
                                        |              (courtroom number)
21

22  **TO THE HONORABLE COURT AND TO ALL PARTIES:**

23
          PLEASE TAKE NOTICE that on August 4 at _____ ,
24                                            (date)              (time)

25  or as soon thereafter as this matter may be heard in the above-entitled Court

26  located at 333 Las Vegas Blv so R 1334, Las Vegas, NV 89101  ,
                        (address of the Court in which the motion is being made)
27
    HIRAM GLENN Jr                          , the    Plaintiff
28          (your name)                            (indicate Plaintiff or Defendant)

1
2   Hiram Glenn Jr _____ **(Full Name)**
3   hiramglennjr yahoo com **(Email)**
4   1841 Drifter Peak ST **(Address Line 1)**
5   Las Vegas, NV 89144 **(Address Line 2)**
6   702-929-9202 _____ **(Phone Number)**
7   Plaintiff _____ in Pro Per
    **(indicate Plaintiff or Defendant)**

8
9                    **UNITED STATES DISTRICT COURT**
10                        **DISTRICT OF** Nevada

11                                          Case No.: 222-CV-00712 _____
12   Hiram Glenn Jr,
13              **Plaintiff,**                **DECLARATION IN SUPPORT OF**
                                              **MOTION FOR SUMMARY**
14        vs.                                 **JUDGMENT PURSUANT TO**
                                              **FED. R. CIV. P. 56**
15   Mission Support and
16   test Services LLC
17   _____,                  **Hearing Date:** _____
              **Defendant(s).**              **Hearing Time:** _____
18
                                              **Judge:** _____
19                                                        **(Judge's name)**
                                              **Place:** _____
20                                                       **(courtroom number)**

21   I, Hiram Glenn Jr _____, declare as follows:
                 **(print name)**
22
23        1.   I am the Plaintiff _____ in the above-entitled case.
                          **(indicate Plaintiff or Defendant)**
24        2.   I have personal knowledge of the following facts, and, if called as a
25   witness, I could and would competently testify thereto.
26        3.   I discussed and attempted to resolve the issues raised in this motion
27   with the opposing counsel in this case on (*date*): NA _____.
28
     *Revised: March 2019*
     *Form Prepared by Public Counsel.*
     *© 2013, 2019 Public Counsel.*
     *All rights reserved.*
                                    1

222-CV-00712

1  Hiran Glenn Jr _____ (Full Name)

2  hiranglennjr yahoo com (Email)

3  1841 Drifters Park ST (Address Line 1)

4  Las Vegas, NV 89144 (Address Line 2)

5  702-929-9202 _____ (Phone Number)

6  Plaintiff _____ in Pro Per

7  (indicate Plaintiff or Defendant)

8

9                UNITED STATES DISTRICT COURT
                 DISTRICT OF Nevada

10

11                                   Case No.: 222-CV-00712

12  Hiran Glenn Jr _____ ,

13              Plaintiff,              **MEMORANDUM OF POINTS**
                                        **AND AUTHORITIES IN SUPPORT**
14          vs.                         **OF MOTION FOR SUMMARY**
                                        **JUDGMENT PURSUANT TO**
15  Mission Support and                 **FED. R. CIV. P. 56**

16  Test Services LLC

17  _____ ,                   **Hearing Date:** _____

18              Defendant(s).           **Hearing Time:** _____

19                                      **Judge:** _____
                                              (Judge's name)
20                                      **Place:** _____
                                              (courtroom number)
21  //

22  //

23  //

24  //

25  //

26  //

27

28

*Revised: March 2019*
*Form Prepared by Public Counsel.*
*© 2013, 2019 Public Counsel. All rights reserved.*

1

Memorandum of Points and Authorities in Support of Motion for Summary Judgment

Case 222CV00712

## I. __INTRODUCTION__

*(Include a brief statement of the facts and the procedure in the case that are relevant to this motion.)*

My case stems from years of
despaired treatment on the job.
When this workplace discrimination
would not stop, I had no other option
but to file a complaint with Labor
Relations and later with U.S.
Equal Employment Opportunity
Commission (EEOC.